UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOMEDICS, INC.,

      PLAINTIFF,

v.                                      Case No. 05-CV-70102-DT

YEJEN INDUSTRIES, LTD.,             Honorable Sean F. Cox

      DEFENDANT.

_____/

**OPINION DENYING
DEFENDANT'S MOTION TO DISMISS**

      Plaintiff Homedics, Inc. filed this action for trade dress infringement against Defendant

Yejen Industries, Ltd. on January 11, 2005.  The matter is currently before the Court on

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.  The parties have fully briefed

the issues and the Court heard oral argument on August 31, 2006.  For the reasons set forth

below, the motion shall be denied.

      I.    BACKGROUND

      Plaintiff Homedics, Inc. ("Homedics") filed this action against Defendant Yejen

Industries, Ltd ("Yejen") on January 11, 2005.  Homedics's complaint alleges false designation

of origin or sponsorship, false advertising, and trade dress infringement under 15 U.S.C.

§1125(a).

      On January 27, 2006, Yejen filed a Motion to Dismiss, pursuant to Fed. R. Civ. P.

12(b)(6), asserting that this Court lacks personal jurisdiction.  In its response to that motion,

1

Homedics requested that the Court allow it to proceed with discovery limited to the jurisdictional issue. On March 7, 2006, the Court issued an order allowing discovery and further briefing on the issue of personal jurisdiction. That order gave the parties until May 31, 2006, to complete jurisdictional discovery and ordered the parties to file supplemental briefs regarding Yejen's Motion to Dismiss by June 30, 2006. Thereafter, both parties filed supplemental briefs.

The following represents the facts taken in a light most favorable to Homedics. Yejen is a Chinese company that manufactures the accused products, personal massagers, that are sold in the United States through Wal-Mart stores. (Pl.'s Compl. at ¶ 2). Yejen claims that it sold the accused massagers to Leader Light, Ltd. ("Leader Light"), who in turn, sold the massagers to Wal-Mart.

Leader Light supplied the design of the packaging to Yejen, who then made the packaging and instruction manual for the accused massagers. The packaging and instruction manual are printed exclusively in English and indicate that the product is to be marketed by Wal-Mart in the United States. (Pl.'s 2/8/06 Br. at 3-4). Thus, Yejen knew that the massagers it sold to Leader Light were intended for Wal-Mart, one of the largest retailers in the United States.

Yejen advertises the accuser massager on a website that states that Yejen delivers products "to buyers in Europe and America," and that its "target markets" include the "U.S.A." (Ex. D to Pl.'s 2/8/06 Br.) On other websites, Yejen states that its main export markets include "North America" and that its major customers include Wal-Mart, K-Mart, and Target – large, well-known retailers in the United States. (Exs. B & C to Pl.'s 2/8/06 Br.).

"Establishments involved in the production and distribution of medical devices intended for marketing or leasing (commercial leasing) in the United States (U.S.) are required to register"

with the United States Food and Drug Administration ("FDA").  (*See* Ex. H to Pl.'s 2/8/06 Br.).

Yejen registered with the FDA.  (Ex. G to Pl.'s 2/8/06 Br.).  Yejen's FDA-registered products

include "various types of battery powered/electric therapeutic massagers."  (*Id.*).  Yejen's FDA

registration profile identifies Leader Light as Yejen's "U.S. Agent."  (Ex. G to Pl.'s 2/8/06 Br.).

The controls on Yejen's accused massagers are in English only.  (Pl.'s 2/8/06 Br. at 3).

The plug on Yejen's accused massager fits electrical outlets in the United States and Canada.

(Pl.'s 2/8/06 Br. at 3).  The plug cannot be used in China.  (*Id.*)

Yejen also applied for, and received, Underwriters Laboratories ("UL") certification for

the accused massagers.  (Pl.'s 2/8/06 Br. at 4).  Although UL offers several certifications,

including certifications that are required in Asia, and even globally, Yejen applied for a specific

UL certification that indicates the product is in compliance with Canadian and United States

requirements.  (Ex. F to Pl.'s 2/8/06 Br.).

The purchase order[1] produced by Yejen during discovery indicates that Yejen shipped the

accused massagers to Leader Light in the United States (*i.e.*, to Suffolk, Virginia; Savannah,

South Carolina; Houston, Texas; and Southgate, Michigan) (*See* Ex. 1 to Pl.'s 7/21/06 Br.)  The

purchase order also indicates that Yejen gave a warranty to Leader Light's "foreign clients:"

> The goods in this purchase order will be examined by Buyer's foreign clients to
> determine if they are acceptable.  Seller has the full responsibility to the quality
> problem raised by Buyer's foreign clients after their receiving of the products, and
> to the requests for returning the products and claiming the reimbursement.

(*See* Ex. A to Pl.'s 7/21/06 Br.)  The purchase order further indicates that Yejen reserved the

right to sue Leader Light's foreign customers, such as Wal-Mart, if there were disputes over

---

[1]The purchase order produced by Yejen was in Chinese, but was translated into English.
Yejen did not dispute the accuracy of the translation.

3

reimbursement and Yejen reserved the right to sue Leader Light's foreign customers to recover

any unpaid debts:

> Buyer reserves the right to withhold payments, to terminate the purchase order,
> and to recover the payment which has already paid.  Seller abandons the right to
> challenge Buyer's actions, to sue Buyer, to recover the debt, and to have the right
> of claim.  However, Seller reserves the right to negotiate with Buyer's foreign
> clients.  If the parties fail to reach an agreement, Seller reserves the right to sue
> foreign clients of the Buyer, to recover the debt, and to have the right of claim.

(Ex. 1 to Pl.'s 7/21/06 Br.).

<u>Burden of Proof</u>

When a defendant challenges personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2),

the plaintiff bears the burden of establishing the existence of personal jurisdiction.  *See Neogen*

*Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  In the instant matter,

because the Court is not conducting an evidentiary hearing on the matter of personal jurisdiction,

Plaintiff must make only a *prima facie* showing.  *Id.* at 887; *CompuServe, Inc. v. Patterson*, 89

F.3d 1257, 1262 (6th Cir. 1996).   "[I]n the face of a properly supported motion for dismissal, the

plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific

facts showing that the court has jurisdiction."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th

Cir. 1991).  The Court does not, however, consider facts proffered by the defendant that conflict

with those offered by the plaintiff.  *Id.* at 1459.  Under these circumstances, the burden on the

plaintiff is relatively slight and the district court must consider the pleadings and affidavits in the

light most favorable to the plaintiff. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980).

II.   ANALYSIS

Homedics asserts that this Court has personal jurisdiction over Yejen pursuant to FED. R. CIV. P. 4(k)(2).  That rule acts as "a sort of a federal long-arm statute," authorizing jurisdiction even in the absence of a provision granting nationwide service of process.  *Sunshine Distr., Inc. v. The Sports Authority Michigan, Inc.,* 157 F.Supp.2d 779, 788 (E.D. Mich 2001).  To succeed under Rule 4(k)(2), 1) the plaintiff's claim must be one arising under federal law; 2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and 3) the federal court' exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law.  *Id.*  Under this rule, "the constitutional requirements are the same as with any other personal jurisdiction inquiry, *i.e.*, relatedness, purposeful availment, and reasonableness, only in reference to the United States as a whole, rather than a particular state."  *Id.*

Here, there is no dispute that Homedics's claim, trade dress infringement under 15 U,S.C. §1125(a), arises under federal law.  In addition, Yejen's counsel acknowledged at the August 31, 2006 hearing that Yejen is beyond the jurisdictional reach of any state court of general jurisdiction.  Accordingly, in order to determine if personal jurisdiction over Yejen exists under Rule 4(k)(2), the Court must apply three criteria:

> 1) The defendant must have purposefully availed itself of the privilege of acting in the United States or causing consequence in the United States.
>
> 2) The cause of action must arise from Yejen's activities in the United States; and
>
> 3) The acts of Yejen or the consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over Yejen reasonable.

*See Theunissen,* 935 F.2d at 1460.  Purposeful availment, however, is the key factor.  *Id.*  (Stating

5

that purposeful availment by the defendant is the "*sine qua non*" of personal jurisdiction.).

In this case, Homedics asserts that the contacts establishing that Yejen purposefully availed itself of acting in the United States include the following:

- Yejen sold the accused massagers to Leader Light, who in turn, sold the massagers to Wal-Mart. Because the packaging and instruction manual are printed in English and indicate the product is to be marketed by Wal-Mart in the United States, Yejen knew that the massagers it sold to Leader Light were intended for Wal-Mart, one of the largest retailers in the United States.

- Yejen advertises that the United States is one of its target markets and that its major customers include large, well-known retailers in the United States including Wal-Mart, K-Mart and Target.

- Yejen designed the accused massagers for sale in the United States by: 1) printing the controls, instruction manual and packaging in English only; 2) using a specific plug on the massagers that fits electrical outlets in the United States; 3) registering with the FDA, as all businesses are required to do if they intend to market medical devices in the United States; and 4) applying for, and receiving, a specific UL certification that indicates the product is in compliance with Canadian and United States requirements.

- Yejen's FDA registration profile lists Leader Light as Yejen's "U.S. Agent."

- Yejen shipped the accused massagers into the United States (*i.e.*, to Suffolk, Virginia; Savannah, South Carolina; Houston, Texas; and Southgate, Michigan).

- Yejen gave a warranty to Leader Light's "foreign clients."

- Yejen reserved the right to sue Leader Light's foreign clients, such as Wal-Mart, if there were disputes over reimbursement or to recover unpaid debts.

The task before this Court is to determine whether these contacts are sufficient to support an exercise of personal jurisdiction over Yejen.

The Court is satisfied that Homedics has established that Yejen purposefully availed itself of the United States market.

"The Sixth Circuit has adopted Justice O'Connor's 'stream of commerce plus' test" from

6

*Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 107 (1987). *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006). In *Asahi*, the United States Supreme Court analyzed the purposeful availment test in detail. *Id.* "Justice O'Connor's plurality opinion held that 'the placement of product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum state . . .'" *Id.* (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 112). This formulation is known as "stream of commerce plus." *Id.* "In concluding that the district court lacked jurisdiction, the plurality opinion concluded that there was no evidence that Asahi 'designed its product in anticipation of sales in California.'" *Id.* at 218-19.

"As an example of purposeful design that would presumably meet the 'stream of commerce plus' test," Justice O'Connor's opinion cited *Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovanni Agusta*, 553 F.Supp. 328 (E.D. Pa. 1982). *Id.* at 219. In that case, a helicopter crashed over the Ohio River. After the plaintiff filed suit, the trial court considered whether it has personal jurisdiction over the french corporation that had made the ball bearings for the helicopter. The ball bearings had been custom-designed for the helicopter, which was manufactured by Augusta, an Italian company. The french corporation "knew that Augusta marketed its helicopters to the 'executive corporate transport market' in the United States and Europe." *Id.* The district court properly concluded that it had personal jurisdiction over the French corporation because it "designed the ball bearings exclusively for the A-109 helicopters, knowing that these helicopters would be sold in the United States (and other countries)." *Id.*

The Court concludes that the facts of this case meet the "stream of commerce plus" test.

Like the defendant in *Rockwell*, Yejen has done far more than simply release its product into the stream of commerce. The evidence indicates that Yejen designed the accused massager for sale in the United States and knew that its products would be sold here.

Yejen chose to print the controls, instruction manual and packaging for the accused massagers in English only. It also designed the product so that it is compatible with United States electrical outlets.

Yejen also chose to register with the FDA, as all businesses are required to do if they intend to market medical devices in the United States. Yejen also elected to apply for, and received, a specific UL certification that indicates the product is in compliance with Canadian[2] and United States requirements. In addition, because Yejen made the packaging for the products, that clearly indicates the products will be marketed by Wal-Mart in the United States, Yejen was aware that the products would be sold in the United States.

That Yejen targets the United States market is further established by the fact that Yejen advertises that the United States is one of its target markets and that its major customers include large, well-known retailers in the United States including Wal-Mart, K-Mart and Target.

In addition to designing its product for the United States market, Yejen has also purposefully availed itself of the United States market by: 1) identifying Leader Light as its "U.S. Agent;" 2) shipping its products into the United States; 3) providing a warranty on its

---

[2]In response to the evidence presented showing that Yejen designed its product for the United States, Yejen asserts that the product could also be sold in Canada because Canadians speak predominately English and use the same plug and Canada accepts the UL certification that Yejen obtained. (*See* Yejen's 7/25/06 Br. at 3 n.1) As the Sixth Circuit noted in *Fortis*, under the *Asahi* formulation, "the crucial question" is whether Yejen designed its product for or directed its product to the forum state – not whether the United States was the *exclusive* market for the defendant's product. *Fortis*, 450 F.3 at 222.

8

product to Leader Light's foreign clients; and 4) reserving the right to sue Leader Light's foreign clients, such as Wal-Mart.

Accordingly, the Court concludes that pursuant to *Asahi* and *Fortis*, Yejen's contacts with the United States, viewed as whole, are sufficient to establish purposeful availment.

The second consideration is whether the cause of action arises out of Yejen's activities in the forum state, which in this case is the United States as a whole. *Fortis*, 450 F.3d at 222; *Sunshine Distribution, Inc.*, 157 F.Supp.2d at 788. "The Sixth Circuit establishes a 'lenient' threshold for meeting this requirement," such that the arising out of factor requires only that the cause of action have a substantial connection with the defendant's activities in the forum. *Fortis*, 450 F.3d at 222.

In this light, the facts here are sufficient to establish that the claim arises out of Yejen's activities in the United States. The alleged harm ultimately suffered by Homedics occurred in the United States when Yejen delivered the accused massagers to South Carolina, Virginia, Texas and Michigan. In addition, Yejen registered with the FDA in the United States and sought UL certification here as well.

Lastly, the Court must consider whether exercising jurisdiction over Yejen would be reasonable. Whether the exercise of jurisdiction over a foreign defendant is reasonable is a function of balancing three factors: 1) the burden on the defendant; 2) the interests of the forum state; and 3) the plaintiff's interest in obtaining relief. *Fortis*, 450 F.3d at 223. Nevertheless, the Sixth Circuit has observed that where the first two criteria of the minimum contacts test are satisfied, "only the unusual case" will not meet the third criterion of reasonableness. *Id.*

Yejen asserts that the burden of litigating in this forum would be substantial because it

9

would be forced to travel great distances and defend itself in a foreign tribunal. Yejen, however, has already exhibited its familiarity with the administrative and legal processes by registering its products with the FDA and by seeking and obtaining at least one patent in the United States. (*See* Exs. G & I to Pl.'s 2/8/06 Br.). The Court therefore finds Yejen's argument unpersuasive. *See Sunshine Distribution, Inc.,* 157 F.Supp.2d at 789-90. The Court is also satisfied that the United States has a significant interest in enforcing its statutes, including the Lanham Act. Thus, the Court is satisfied that an exercise of personal jurisdiction by this Court is reasonable and therefore consistent with due process.

Accordingly, the Court concludes that Homedics has made a *prima facie* showing of personal jurisdiction.

### III.    CONCLUSION

For the reasons set forth above, the Court finds that its exercise of personal jurisdiction over Defendant Yejen is proper pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is therefore denied. An Order consistent with this Opinion shall issue forthwith.

S/Sean F. Cox
SEAN F. COX
UNITED STATES DISTRICT JUDGE

Dated: September 8, 2006

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOMEDICS, INC.,

      PLAINTIFF,

v.                                        Case No. 05-CV-70102-DT

YEJEN INDUSTRIES, LTD.,           Honorable Sean F. Cox

      DEFENDANT.

_____/

## ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS

      Defendant Yejen Industries, Ltd. having filed a Motion to Dismiss for Lack of Personal Jurisdiction; and the Court having issued an Opinion Denying Defendant's Motion to Dismiss on September 8, 2006;

      IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

                          S/Sean F. Cox_____
                          SEAN F. COX
                          UNITED STATES DISTRICT JUDGE

Dated: September 8, 2006

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing opinion and order was served upon counsel of record via the Court's ECF System and/or U. S. Mail on September 8, 2006.

                          s/Jennifer Hernandez
                          Case Manager to
                          District Judge Sean F. Cox